UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

SHEAKWAN GRAY,

                Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
20-CR-402 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**
On December 10, 2021, Sheakwan Gray ("Defendant") pleaded guilty to the sole count of the Indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to thirty-seven months of incarceration, two years of supervised release with special conditions, a $100.00 special assessment, and forfeiture of the firearm used in the instant offense.

## BACKGROUND

On September 4, 2020, the Government filed a Complaint charging Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Specifically, the Complaint alleges Defendant possessed a loaded Derringer, 9mm Luger caliber, Cobra Enterprises Model CBP, with serial number CT026189. On September 25, 2020, a grand jury returned an Indictment against Defendant charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On December 10, 2021, Defendant pleaded guilty to the sole count of the Indictment.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I. Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, No. 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

i. <u>History and Characteristics of the Defendant</u>

Defendant was born on September 23, 1990, in Brooklyn, New York to Gerard and Carol Gray. Presentence Investigation Report ("PSR") ¶ 38, ECF No. 30. Defendant's father lives in Brooklyn and works as an electrician. *Id.* Defendant reported he does not have a close relationship with his father, who is not aware of the instant offense. *Id.* Defendant's mother also

2

resides in Brooklyn and works as a home attendant. *Id.* Defendant reported having a good relationship with his mother, who is aware of the instant offense and remains supportive. *Id.*

Defendant had four siblings, two of whom are deceased. *Id.* ¶ 39. Gerard Gray passed away in 2010 at the age of 20 in a car accident. *Id.* Kimani Gray was killed by a police officer in 2013 at the age of 16. *Id.* According to Defendant, the police claimed his brother had been displaying a firearm at them. *Id.* Defendant's other siblings are Mahnefah Gray, who resides and Brooklyn and works in a school, and Gishania Gray, who also resides in Brooklyn and is unemployed. *Id.* Defendant's siblings are aware of the instant offense and remain supportive of him. *Id.* Defendant also has two paternal half-siblings: Givanni Berkett and Omar Gray, both of whom are aware of the instant offense and remain supportive of Defendant. *Id.* ¶ 40. Defendant also has two maternal half-siblings with whom he is not close. *Id.* ¶ 41.

Defendant is a lifelong resident of Brooklyn, New York. *Id.* ¶ 42. He was raised by both of his parents until the age of 14, when his parents separated. *Id.* Following the separation, Defendant and his siblings were made to choose between their two parents. *Id.* Defendant chose to live with his mother, and his father made them leave the home and move into a shelter. *Id.* According to Defendant, his mother struggled to provide the children with basic necessities and received government assistance when he was a child. *Id.* Defendant characterized his childhood as "normal" up until his parents separated, at which point he felt he needed to take on a bigger role in the family. *Id.* Although his father became aggressive toward him if he got in trouble or did something wrong, Defendant reported no other abuse in his family. *Id.*

Since 2013, Defendant has been in a relationship with Jacqueline Marshall, who resides in Brooklyn and works with children with autism. *Id.* ¶ 43. Ms. Marshall is aware of the instant offense and remains supportive of Defendant. *Id.* Defendant and Ms. Marshall have a two-year-

3

old child, who resides with Ms. Marshall. *Id.* Defendant reported having a good relationship with his son, for whom he was a stay-at-home father prior to his arrest. *Id.* As a result, after the revocation of Defendant's pretrial release, Ms. Marshall faced extreme difficulties in caring for their son. *Id.* ¶ 44.

Defendant was in a relationship with Kayla Phillips from 2007 to 2013, and the two have two children together, both of whom reside with Ms. Phillips. *Id.* ¶ 45. Defendant reported having a good relationship with both children, with whom he visited regularly prior to his arrest. *Id.*

Prior to his arrest, Defendant resided at his mother's home in Brooklyn with his mother, girlfriend, and their child. *Id.* ¶ 46. Since November 12, 2020, Defendant has been in custody at the Metropolitan Detention Center in Brooklyn. *Id.* While in federal custody, Defendant has had no work assignments, has participated in programming on effective communication and parenting, and has had one disciplinary incident for refusing to obey an order. *Id.*

ii. Physical Condition

Defendant reported being treated for a gunshot wound at Kings County Hospital in Brooklyn, New York, in February 2012. *Id.* ¶ 49. As a result of his injuries, he had metal plates placed in his hip and arm and was disabled from 2012 to 2016. *Id.* After leaving the hospital, Defendant had to receive daily home care to address his wounds and prevent them from becoming infected. *Id.*

iii. Mental and Emotional Health

Defendant reported no history of mental or emotional health problems. *Id.* ¶ 50.

iv. Substance Abuse

4

Defendant reported occasional use of marijuana since the age of 17. *Id.* ¶ 51. He also reported consuming alcohol rarely. *Id.* Defendant participated in a 90-day treatment program at Reborn in 2018 or 2019 as part of a court order from Kings County Supreme Court. *Id.* ¶ 52.

  v. Educational, Vocational, and Special Skills

Defendant attended Clara Barton High School in Brooklyn, New York for the 9th grade, but he left school because he was getting involved with the "wrong crowd." *Id.* ¶ 53. He later attended the Brooklyn Adult Learning Center to earn a Graduate Equivalency Diploma, but he was not able to complete his courses because the school closed due to the Covid-19 pandemic. *Id.* Defendant also attended the Center for Employment Opportunities from 2018 to 2019 and received a certificate of achievement for completing a workshop on Strategies for Obtaining and Sustaining Employment. Addendum to PSR at 2, ECF No. 37.

  vi. Employment Record

Defendant has been incarcerated for the instant offense since November 12, 2020. PSR ¶ 54. He reported being unemployed for approximately one year prior to his arrest, during which time he was financially supported by his mother. *Id.* Defendant worked for his uncle in construction whenever the company needed extra help. *Id.* Otherwise, Defendant worked "odd jobs" to earn an income. *Id.*

Based on a credit inquiry, Defendant owes a balance of $54,458.00 to the New York State Department of Social Services for family support. Addendum to PSR at 2. His financial profile suggests he is unable to pay a fine. *Id.*

  vii. Criminal History

On December 19, 2013, at age 23, Defendant was convicted of second-degree criminal trespass, resulting in a one-year conditional discharge. PSR ¶ 25. On July 21, 2015, at age 23,

5

Defendant was arrested for assault in the third degree with intent to cause physical injury after he and others punched a traffic enforcement agent in the face; he was later sentenced to a conditional discharge and one day of community service. *Id.* ¶ 26. On October 4, 2016, Defendant was sentenced to thirty days of incarceration and an eight-year order of protection after pleading guilty to assault in the second degree. *Id.* ¶ 27. Defense counsel contests the narrative explanation of the facts surrounding this conviction, calling them "materially false," and moves to strike the narrative in the PSR. Def. Objections to PSR at 1-3. Because those facts have not been proven in this case by a preponderance of the evidence, the Court grants Defendant's motion to strike. Finally, on May 5, 2017, Defendant was arrested in connection with third-degree robbery, a felony, for which he was originally sentenced to two to four years of imprisonment and a twelve-year protection order before being resentenced to one to three years of imprisonment and a two-year protection order. *Id.* ¶ 28.

These convictions result in a criminal history score of five. Because Defendant committed the instant offense while under a criminal justice sentence, specifically, the parole term related to his 2018 conviction for Robbery in the Third Degree, two points are added per USSG § 4A1.1(d), resulting in a criminal history score of seven. According to USSG Chapter 5, Part A, a criminal history score of seven establishes a criminal history category of IV.

    viii.    <u>Nature and Circumstances of the Offense</u>

On April 10, 2020, at approximately 5:40 P.M., two officers with the New York City Police Department ("NYPD") were on patrol in a marked police vehicle near the intersection of Strauss Street and East 98th Street in Brooklyn, New York. PSR ¶ 6. The officers observed a vehicle with an improperly displayed Louisiana temporary license plate in the vehicle's tinted rear window. *Id.* at ¶ 7. The officers stopped the vehicle and found Defendant in the front

6

passenger seat and Defendant's brother in the driver's seat. *Id.* Upon further inspection of the Louisiana license plate, the officers confirmed the license plate was forged. *Id.*

At the officers' request, Defendant stepped out of the vehicle. *Id.* The officers then saw a neon traffic vest labeled "NYPD," sitting on the passenger side seat, and approximately 250 forged $20 bills in the center console. *Id.* Defendant and his brother were apprehended and transported to a Brooklyn precinct in the police vehicle. *Id.* While inside the police vehicle, Defendant repeatedly shuffled in the rear seat and asked to be let out of the vehicle to urinate. *Id.* at ¶ 8. Once at the precinct, Defendant insisted he needed to use the bathroom. *Id.* An officer observed that Defendant, whose hands were cuffed behind his back, had removed one of his shoes. *Id.* When the officer lifted the shoe to inspect it, a loaded handgun fell out of it. *Id.* The handgun had been lodged inside the shoe. *Id.* The handgun was a Derringer 9mm Luger caliber, Cobra Enterprises Model CBP with a serial number CT026189. *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and his illegal possession of a firearm and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, promote respect for the law, and to deter others from similar conduct.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The maximum term of imprisonment is ten years. 18 U.S.C. §§ 922(g)(1), 924(a)(2). By statute, Defendant also faces a maximum supervised release term of not more than three years and a term of probation of not less than one nor more than five years. 18 U.S.C. §§ 3583(b)(2); 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 U.S.C. § 3563(a)(2). In addition, the maximum fine is $250,000.00, *see* 18 U.S.C. § 3571(b), and a special assessment of $100.00 is mandatory, 18 U.S.C. § 3013. Finally, as part of his Plea Agreement, Defendant consented to the forfeiture of the firearm involved in the instant offense.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" USSG § 3553(a)(4)(A).

Under USSG § 2K2.1, the base offense level for Defendant's offense is twenty because Defendant sustained at least one felony conviction of either a crime of violence prior to engaging in the instant offense. *See* USSG §§ 4B1.2(a), 2K2.1(a)(4)(A). Because Defendant accepted responsibility for the offense, the offense level is decreased by two points. USSG § 3E1.1(a). Finally, because the Government was notified in a timely manner of Defendant's intention to plead guilty, the offense level is decreased by one. USSG § 3E1.1(b). This results in a total offense level of seventeen.

For a total offense level of seventeen and a criminal history category of IV, the Guidelines imprisonment range is thirty-seven (37) months to forty-six (46) months of incarceration. The Guidelines further suggest a term of supervised release of one (1) to three (3) years, *see* USSG § 5D1.2(a)(2), and a fine of between $10,000.00 to $95,000.00. USSG § 5E1.2(c)(3).

The Government recommends a within-guidelines sentence of between 30 and 37 months of imprisonment, calling the instant offense an inherently serious crime that Defendant attempted to hide from law enforcement. The Government also states the Defendant's previous convictions and sentences have not sufficiently rehabilitated him. Probation recommends a sentence of 37 months of imprisonment, 2 years of supervised release with a special condition requiring him to consent to a search by a probation, and a $100.00 special assessment, citing the seriousness of the offense and Defendant's failure to be deterred by prior periods of incarceration. Defense counsel urges the Court to impose a sentence of time served, noting Defendant's background, relationships, and the conditions of his incarceration.

### E.  Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). This factor is not relevant to Defendant's sentencing.

### F.  The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and

Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to address "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). Restitution is not applicable to this case. *See* 18 U.S.C. § 3663.

### CONCLUSION

A sentence of thirty-seven months of incarceration and two years of supervised release with a special condition requiring Defendant to submit to a search by a United States probation officer is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court also imposes a special assessment of $100.00 and orders forfeiture of the firearm used in the instant offense, consistent with the Court's December 21, 2021 order.

The Court expressly adopts the factual findings of the PSR and the PSR addendum, barring the stricken portion of Paragraph 27 any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

/s/ WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 19, 2022
Brooklyn, New York